SUMMARY ORDER
Petitioner Zhengfeng Zheng, a native and citizen of China, petitions for review of a September 24, 2007, BIA decision denying his motion to reopen the proceeding, and an April 11, 2007, BIA decision affirming the November 8, 2005, decision of IJ Barbara A. Nelson denying Zheng’s application for asylum, withholding of removal, and relief under the CAT. We assume the parties’ familiarity with the facts and procedural history of this case, and the issues presented by these petitions.
Zheng filed an asylum application in May 2005 asserting that he had been persecuted by the Chinese authorities after complaining about corruption involving his village chief. He had charged the chief with collecting money from people in his village to build a new road but keeping the money for himself. At Zheng’s hearing before the IJ, he testified that he had fled to the United States in September 2004, that he had been arrested by Chinese authorities once prior to his flight, and that there was currently pending in China a summons for his arrest. It had been delivered to his parents, first orally and then in writing. In support of his claim, Zheng submitted a letter sent from his father relating to the summons, together with a faxed copy of the written summons. The IJ denied Zheng’s application, finding that inconsistencies between Zheng’s testimony and the record supported an adverse credibility determination, and that even if he were not non-credible, she would deny the application for lack of corroboration of his claims.
*698 Zheng appealed to the BIA from the IJ’s denial of his application, arguing that inconsistencies the IJ relied on between his father’s letter and the summons resulted from a misreading of his father’s letter, which could be remedied by a new translation that he supplied. Zheng also stated that while the government relied on a “credible fear” interview to find inconsistencies, it did not proffer the interview to the IJ. The BIA declined to admit the new translation of Zheng’s father’s letter and affirmed the IJ’s denial of Zheng’s application. Zheng filed a motion to reopen with the BIA to submit the original version of the summons — instead of the faxed version — and alleging that the BIA erred in not admitting the new translation of the letter. The BIA denied the motion to reopen, concluding that admitting the original summons would not alter the course of the proceedings. Zheng appeals both the denial of the motion to reopen and the affirmance of the IJ’s denial of his application for asylum, withholding of removal, and CAT relief.
When the BIA adopts the decision of the IJ and supplements the IJ’s decision, we review the decision of the IJ as supplemented by the BIA. Yan Chen v. Gonzales, 417 F.3d 268, 271 (2d Cir.2005). “[W]e review the IJ’s factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as ‘conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.’ ” Corovic v. Muka-sey, 519 F.3d 90, 95 (2d Cir.2008) (quoting 8 U.S.C. § 1252(b)(4)(B)). Under this standard, a finding will stand if it is supported by “ ‘reasonable, substantial, and probative evidence’ ” in the record, which we consider as a whole. Diallo v. I.N.S., 232 F.3d 279, 287 (2d Cir.2000)(quoting 8 U.S.C. § 1105a(a)(4)). However, “‘the fact that the [IJ] has relied primarily on credibility grounds in dismissing an asylum application cannot insulate the decision from review.’ ” Cao He Lin v. U.S. Dep’t of Justice, 428 F.3d 391, 400 (2d Cir.2005) (quoting Ramsameachire v. Ashcroft, 357 F.3d 169, 178 (2d Cir.2004)). An IJ or the BIA must give “specific, cogent” reasons for rejecting a petitioner’s testimony. See Ramsameachire, 357 F.3d at 178. If the agency’s reasoning or fact-finding process is materially flawed, we will vacate and remand. Cao He Lin, 428 F.3d at 406.
The IJ based her adverse credibility determination on four grounds: (1) inconsistencies between Zheng’s father’s letter and his application for asylum, (2) conflicting testimony by Zheng about when he left his home in China, (3) conflicting statements by Zheng regarding whether he returned to his home on an occasion after his initial departure, and (4) an inconsistency between Zheng’s father’s letter attached to the summons and the summons itself.
The IJ’s finding of inconsistencies relating to conflicting testimony about when he left his home in China, and about whether he returned to his home on an occasion after his initial departure appear to have been based on apparent inconsistencies between his testimony and his “credible fear” and airport interviews. While the government relied heavily on these interviews in cross-examining Zheng, it never submitted them for the record, Zheng apparently was not given access to them, and it does not appear that the IJ examined them. The IJ’s reliance on them to find that Zheng was not credible was therefore erroneous. Cf. Ramsameachire, 357 F.3d at 179 (noting the inherent limitations in airport interviews, requiring that “the BIA and reviewing courts must closely examine each airport interview before concluding that it represents a sufficiently accurate record of *699 the alien’s statements to merit consideration in determining whether the alien is credible”). That the IJ’s reliance on the unsubmitted “credible fear” and airport interviews was error is strengthened by the fact that Zheng contested the government’s characterization of his statements at the credible fear interview as involving misunderstandings.
The other inconsistencies the IJ relied on were based on an insupportable misreading of Zheng’s father’s letter. The IJ read it to be ambiguous as to when Zheng’s father asserts the written summons was delivered. The letter, in the original translation given to the IJ, reads, in relevant part:
We received this summon[s] on September 20 last year when you were on the way of escaping home. The police visited our house and gave oral summons before we received the written summons the day prior to your birthday.**
The IJ focused exclusively on the second sentence in reading the letter to state that the written summons was delivered on September 15 — the day before Zheng’s birthday — rather than September 20 — the date on the written summons attached to the letter. When this last sentence is read with the sentence before it, however, it is clear that Zheng’s father meant that the written summons was delivered on September 20, which is consistent with the date on the summons he attached to the letter. The last sentence suggests, then, that the oral summons was given on the 15th, and the written summons attached to the letter (“this summons”) was delivered on September 20. The IJ’s reliance on the alleged inconsistency between the letter’s statement of the written summons date and the date on the summons was thus based on an impermissibly unreasonable interpretation of the letter. See Corovic, 519 F.3d at 95 (stating factual findings are “ ‘conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.’ ”).
The IJ also referred to matters omitted from the letter — that the family had been made to pay the allegedly corrupt official money, or that Zheng had been arrested and placed in custody previous to his flight — omissions the IJ thought to be suspicious. But they are not misstatements, and are relatively minor. They provide insufficient basis alone for an adverse credibility finding. See Diallo, 232 F.3d at 287 (requiring “ ‘reasonable, substantial, and probative evidence’ ” to uphold an IJ’s factual finding); see also id. at 288 (“Where an applicant’s testimony is generally consistent, rational, and believable, disparities like the ones listed above need not be fatal to credibility, especially if the errors are relatively minor and isolated....”).
The BIA noted that even if it interpreted the letter to state that Zheng’s father received only an oral summons on September 15th, the record would still support the IJ’s adverse credibility finding because Zheng had been inconsistent in his statements as to when he had heard about the summons. These alleged inconsistencies were not relied on or mentioned by the IJ. We conclude that this constituted improper fact-finding. See 8 C.F.R. § 1003.1(d)(3)(iv) (“Except for taking administrative notice of commonly known facts such as current events ... the Board *700 will not engage in factfinding in the course of deciding appeals”)- The confusion in whether testimony and documents were referring to the written or the oral summons, and the doubt that it raises about whether there were related inconsistencies in the testimony and documents, render the fact-finding particularly inappropriate here.
The IJ also stated that even if she had found Zheng to be credible, he would still not have met his burden “because of his failure to provide any corroborating evidence.” Where a failure to corroborate is the sole basis for denying a petitioner’s claim, the IJ must (1) point to specific pieces of missing, relevant documentation, and (2) show that this documentation was reasonably available. See Jin Shui Qiu v. Ashcroft, 329 F.3d 140, 153 (2d Cir.2003), overruled on other grounds, Shi Liang Lin v. U.S. Dep’t of Justice, 494 F.3d 296 (2d Cir.2007) (en banc). The IJ did not do so here. The IJ also erred when she stated that Zheng had failed “to provide any corroborating evidence.” Zheng offered both the summons and his father’s letter as corroboration for substantial portions of his testimony.
Finally, the BIA denied Zheng’s motion to reopen because it concluded that admitting the original summons into evidence would not “change the result” of the case, in part, because it would not affect the adverse credibility ruling of the IJ. In light of the fact that we are vacating the IJ’s adverse credibility determination in this order, we vacate the BIA’s decision denying the motion to reopen, and instruct it to reconsider the motion in light of our ruling.
For the foregoing reasons, the petitions for review of the order of the BIA denying the motion to reopen and the BIA’s decision affirming the IJ’s ruling are hereby GRANTED. We VACATE the orders of the BIA, and REMAND for further proceedings consistent with this order.

 Zheng’s birthday is September 16. The new translation submitted reads: "We received this written summons on September 20 last year. At that time, you had already left to escape. Also, before we received this written summons, the public security officers had come to our home on the day before your birthday and had given us the oral summons.”